UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN E. DEMERITT,

        Plaintiff,                       Case No. 1:15cv146

        vs.                               Judge Michael R. Barrett

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

        Defendant.

**OPINION AND ORDER**

This matter is before the Court on: 1) Defendant Liberty Life Assurance Company's ("Liberty Life") Motion for Judgment (Doc. 13); and 2) Plaintiff Kevin Demeritt's Motion for Judgment as a Matter of Law (Doc. 16) and the Memorandum in Opposition filed by Liberty Life (Doc. 17).

For the reasons discussed below, Liberty Life's Motion (Doc. 13) is **GRANTED** and Plaintiff's Motion (Doc. 16) is **DENIED**.

**I.    BACKGROUND**

Plaintiff brings this action against Liberty Life under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq*. seeking judicial review of the denial of long-term disability ("LTD") benefits.

Plaintiff is a former assistant manager at Wal-Mart Stores, Inc. ("Wal-Mart"). Liberty Life sold and maintained a Group Disability Income Policy ("Policy"). By virtue of his employment with Wal-Mart, Plaintiff participated in the Policy sponsored by Wal-Mart and administered by Liberty Life.

> Under the Policy, a Disability Benefit will be paid:
>
> When Liberty receives proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:
>
> 1. Disability;
> 2. Regular Attendance of a Physician; and
> 3. Appropriate Available Treatment
>
> The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether a Covered Person is Disabled, for persons other than pilots and co-pilots, Liberty will not consider employment factors, including but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

*See* Administrative Record (Doc. 12 at LL000026). On June 4, 2012, Plaintiff sustained a lumbar strain in the course and scope of his employment. On May 6, 2013, Plaintiff filed a disability claim with Liberty Life under the Policy based on a diagnosis of a sprain in his lumbar region. (LL000049). The Policy defines Disability or Disabled as:

> 1. For persons other than truck drivers, pilots, co-pilots and crewmembers of an aircraft:
>
>> i. that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>>
>> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

(LL000013). Under the terms of the Policy, Plaintiff received short term disability for a period of time, and then received LTD benefits under the Own Occupation standard as defined in the

2

Policy. (LL000365-367). Own Occupation is defined under the Policy:

> "Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is performed at Wal-Mart Stores, Inc.

(LL000017).

After receiving 12 months of LTD benefits, Plaintiff was evaluated under the Any Occupation standard as required under the Policy. Any Occupation is defined as follows:

> "Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

(LL000012).

In a letter dated July 15, 2014, Liberty Life informed Plaintiff that he no longer met the definition of Disabled as defined under the Any Occupation standard. (LL000135-139). The letter explained that the denial of benefits was based on the review of medical documentation obtained from Dr. Jeffery Stambough and Dr. James Foster. Plaintiff's claim was also referred for clinical review and assessment by Dr. Richard Avioli, a board certified physician in orthopedic surgery. (LL000136). In addition, Patricia Thal, an independent vocational specialist, conducted an analysis of Plaintiff's current capabilities, training, education and experience, and identified three occupations Plaintiff could perform: 1) Supervisor, Customer Service Representative; 2) Customer Service Representative; and 3) Supervisor, Order Clerks. (LL000140-142). While Liberty Life acknowledged that the Social Security Administration found Plaintiff disabled, it asserted that based upon its review of Plaintiff's claim, Plaintiff did not meet the definition of Disabled from Any Occupation under the terms of the Policy. For that reason, Plaintiff's LTD benefits were terminated as of August 4, 2014. (LL000135-139).

3

### A. Medical Evidence Considered by Liberty Life

#### 1. Documentation from Plaintiff's Treating Physicians

Plaintiff listed Dr. James Foster as his primary care physician. (LL000355). Liberty Life requested documents from Dr. Foster on two separate occasions. (LL000279; LL000207). However, none of the medical records provided by Dr. Foster reference low back pain.

Plaintiff also listed Dr. Thomas Shockley as a primary care physician. Dr. Shockley provided office notes from visits on April 17, 2013, July 8, 2013 and September 16, 2013. (LL000383-384; LL000376-377; LL000330-331). He diagnosed Plaintiff with a lumbar sprain. *Id*. The MRI showed lumbar stenosis disc protrusion. (LL000377). Dr. Shockley also completed a "Restrictions Form" provided by Liberty Life after each office visit, which specified what Plaintiff was capable of performing occupationally on a full-time basis. On June 27, 2013, Dr. Shockley wrote "N/A" next to Plaintiff's occupational capabilities as a result of his lumbar sprain. (LL000382). On July 11, 2013, Dr. Shockley listed Plaintiff as "sedentary," and made handwritten changes specifying that Plaintiff was unable to lift any weight, and was limited to sitting 100% of the time with no standing or walking. (LL000375). He also noted that Plaintiff could not bend, squat, kneel, twist or climb, and could not reach above shoulder level until around September 17, 2013. *Id*. Dr. Shockley wrote that Plaintiff's estimated return to the office was September 17, 2013. *Id*. On September 24, 2013, Dr. Shockley listed Plaintiff as "sedentary" until January 1, 2014, but without the specific restrictions listed on his July 11, 2013 Restrictions Form. (LL000326). Sedentary is defined on the Restrictions Form as "[l]ifting/carrying up to 10 pounds occasionally, sitting 50% of the time and standing/walking occasionally." (LL000326). Dr. Shockley also attached the office note from Dr. Jeffery L. Stambough's September 20, 2013 evaluation of Plaintiff. (LL000327-329).

Dr. Stambough noted that Plaintiff's "pain is mild with a rating of 4/10" *Id*. Dr. Stambough ordered an MRI of Plaintiff's lumbosacral spine. *Id*. The MRI showed a small disc protrusion. *Id*. He also noted that Plaintiff "has degenerative changes at L4-5 and L5-S1 without evidence of significant stenosis compromised or abnormalities." *Id*. Dr. Stambough ordered a CT myelogram of the lumber spine as part of his treatment plan. *Id*.

Plaintiff followed up with Dr. Stambough on October 18, 2013. (LL000287-288). Dr. Stambough noted no change in symptoms, test results or treatment from Plaintiff's prior visit. *Id*. Dr. Stambough saw Plaintifff again on December 6, 2013. (LL000289-290). His office note indicated that Plaintiff's pain had worsened and was moderate and constant, a 5/10. *Id*.

On January 17, 2014, Plaintiff reported that "symptoms have worsened since the last visit. Pain is severe with a rating of 10/10. . .The patient is continuing to have pain that is incapacitating." (LL000198). Dr. Stambough's January 17, 2014 Treatment Plan further noted that "[u]nfortunately he has a diagnosis of a strain which is understood to be short term although I do not feel that is the nature of his symptoms at this time." (LL000200). However, the results of his lumbar examination were the same as his December 6, 2013 results. *Id*. Dr. Stambough also noted that he had not been able to get additional studies. *Id*. Consequently, there is no objective medical evidence to confirm Plaintiff's self-reported symptoms in January 2014.

### 2. Dr. Avioli's Review of Plaintiff's Medical Records

Liberty Mutual engaged Dr. Richard Avioli, a board certified orthopedic surgeon, to independently review Plaintiff's medical records. (LL000315-319). Dr. Avioli did not perform a physical examination of Plaintiff. *Id*. Nonetheless, on October 14, 2013, he rendered a report, which summarized the medical documentation provided by Plaintiff's physicians. *Id*. Specifically, Dr. Avioli described Plaintiff's impairments as follows:

> The medical record documentation indicates that the claimant's orthopedic impairment involves chronic low back pain with numbness radiating into both legs with an occasional sense of weakness after a work-related injury on 6/4/12. Workup including x-rays of the lumbar spine demonstrate mild lumbar degenerative disk disease and an MRI scan demonstrated a mild L4-5 disk bulge with stenosis and L5- S1 disk protrusion abutting the ventral thecal sac and S1 nerve roots. (The MRI report is not included in the medical record documentation available for my review but is referenced in one of Dr. Shockley's office notes.) As a result, the claimant's impairment of low back pain with leg numbness due to lumbar degenerative disk disease with possible lumbar canal stenosis with radiculitis would result in reasonable restrictions and limitations including the capacity to occasionally to frequently sit/stand/walk, occasionally bend/twist/stoop/squat/kneel, no ladder climbing, and no push/pull/lift greater than 10 pounds but otherwise unrestricted use of the arms and hands. These restrictions and limitations could be reassessed after the claimant's next office visit with Dr. Stambaugh which is scheduled for October 18, 2013, at which time discussion will be had about the results of the lumbar CT myelogram that Dr. Stambaugh referred the claimant for and presumably treatment options. In addition, consideration for alternative assessment technique to help facilitate assessment of the claimant's functional capacity with respect to his low back and leg condition could be made.

*Id*. Based upon his review of the record, Dr. Avioli concluded that "[t]he medical record documentation does not support that the claimant would be unable to perform a full-time occupation with the restrictions and limitations as outlined [above]." (LL000316).

Dr. Avioli sent a summary of his report and findings to Dr. Shockley. (LL000313-314). He asked that Dr. Shockley sign and date a copy of his letter if he agreed with Dr. Avioli's summary. (LL000314). He asked Dr. Shockley to make appropriate corrections or additions. *Id*. There is nothing in the record indicating whether Dr. Shockley agreed or disagreed with the summary.

On January 14, 2014, Dr. Avioli sent a letter to Dr. Stambough summarizing his findings. (LL000282-283). He also asked Dr. Stambough to sign and date a copy of his letter if he agreed with the summary, asking him to make appropriate corrections or additions. *Id*. In Dr. Stambough's January 17, 2014 office note referenced above, he noted the following: "I have

6

reviewed the notes from Dr. Avioli . . . I am unable to sign that at this point in time." (LL000199). His note further indicated that from his standpoint, Plaintiff remained on long term disability. (LL000200). However, no new diagnostic tests were performed that day[1]. (LL000199).

Dr. Avioli issued a second report on January 15, 2014. (LL000274-277). He concluded that "there has been no change in the documentation of the claimant's impairment." (LL000274). Again, Dr. Avioli concluded that the medical records did not support a finding that Plaintiff could not work on a full-time basis with restrictions and limitations. (LL000275).

On June 30, 2014, Dr. Avioli issued a third report. (LL000145-150). He opined that the updated medical documentation did not support that Plaintiff's low back condition was so severe to have prevented him from returning to work with restrictions and limitations. (LL000146). Of importance, he also noted the lack of documentation demonstrating that Plaintiff was receiving ongoing treatment. *Id*. He continued:

> This assessment of the claimant's work capacity could be reconsidered if there is updated documentation in the medical record over the next 6-12 months in which there are objective findings to support the claimant's complaint of intermittent low back pain (e.g., results of additional testing such as lumbar MRI scan, CT scan of the lumbar spine, electrodiagnostic testing of the lower extremities, OVNs from Dr. Stambaugh). In addition, consideration for alternative evaluation technique of the claimant's functional capacity could be made in order to further define the claimant's lumbar condition.

(LL000146).

### B. Plaintiff's Appeal

On December 12, 2014, Plaintiff appealed the decision to terminate his LTD benefits, submitting a handwritten letter with six attachments. (LL000108-125). In his letter, he explained that his condition had not changed, and that the Social Security Administration found

---

[1] The diagnostic test findings only note that "[o]ld films and MRI older reviewed."

him disabled. He also provided medical documentation from an office visit with Dr. Stambough on October 17, 2014 at which time an MRI and EMG were ordered. (LL000114-115). The MRI showed that Plaintiff had L3-4 mild spinal stenosis; L4-5 mild spinal stenosis; and L5-S1 shallow disc protrusion, annular rent, eccentric left, gently flattening left ventral dural sac and left S1 nerve root. (LL000119-120). The results further noted that "[a]ppearance of the spine is similar to July 2012 MRI." (LL000120). Plaintiff's November 14, 2014 follow up visit with Dr. Stambough noted that a review of the MRI and EMG results indicated primarily displacement of lumbar intervertebral disc without myelopathy. (LL000121). Plaintiff also attached a December 5, 2014 office note from Dr. Atul Chandoke, a pain management physician. (LL000123-125). Dr. Chandoke found that Plaintiff had "significant R L4/5 and L5/S1 radiculopathy." (LL000124). He concluded that Plaintiff would benefit from an epidural steroid injection. (LL000125). Although Dr. Chandoke noted that Plaintiff "appears to have failed a conservative non-interventional treatment for low back after having tried it for a period exceeding 4 weeks," he did not draw any conclusions specific to Plaintiff's functional capacity. (LL000123-125).

For purposes of Plaintiff's appeal, Dr. Philippe Chemaly, Jr., a board certified physician in physical medicine and rehabilitation, with additional certification in pain management, conducted an independent review of Plaintiff's file at Liberty Life's request, and issued a report on January 28, 2015. (LL000087-93). He outlined the records reviewed to prepare his report as follows:

1. Attending Physician Statements completed by:
    a. Thomas Shockley, MD, Orthopedic Surgery, dated 6/27/13 through 9/24/13 and undated
    b. Jeffery Stambough, MD, Orthopedic Surgery, dated 5/2/14
2. Progress Notes, Correspondence, and/or Consultations completed by:
    a. Multiple Providers at Tristate Orthopaedic, dated 4/17/13 through 11/14/14
    b. James Foster, MD, Family Medicine, dated 6/24/13 through 1/17/14

8

      c. Atul Chandoke, MD, Pain Management, dated 12/5/14
3. Diagnostics
4. Labs
5. Medication Lists and/or Pharmacy Records
6. Vocational Evaluation completed by Patricia Thal, MA, CDMS, ABDA, dated 7/7/14
7. Peer Review and Related Correspondence completed by Richard Avioloi, MD, Orthopedic Surgery, dated 10/14/13 through 6/30/14
8. Investigation Documents
9. Employee Statements
10. Employer Statements
11. Job Description and/or Occupational Demands
12. Workers' Compensation Documents
13. Social Security Administration Documents
14. Internal Client Case Notes
15. Client Documents
16. Miscellaneous Documents
17. Duplicate Doc
18. Authorization

(LL000087-88). Based upon his review of the above documents, Dr. Chemaly opined that the medical file supported a diagnosis of diabetic peripheral polyneuropathy and L5-S1 lumbar radiculitis. (LL000091). As far as restrictions, Dr. Chemaly stated the following:

> Based on my review of the medical documentation, including provider contact with Dr. Stambough, EMG testing of 10/23/14 and lumbar MRI of 10/29/14, with results already noted in this report, and clinical documentation dated 11/14/14 12/5/14 supports the impairment of increased low back pain and lower extremity paresthesia with prolonged standing and walking, sitting, lifting and carrying, pushing/pulling and reaching as well as squatting and bending and would translate to the following restrictions and limitations. Allowance for symptom relieving position break every hour from a seated, standing or walking position for 5-10 minutes. Sitting would be up to 6 hours a day; standing and walking would be up to 2 hours in an 8/hour day, but not consecutive, with allowance for symptom relieving position break every half hour for 5-10 minutes. Occasionally squatting, bending and stooping and reaching below waist and above shoulder and unrestricted between waist and shoulder. Lifting and carrying would be limited to 20 pounds occasionally and 10 pounds frequently. Pushing and pulling would be limited to 30 pounds occasionally and 10 pounds frequently. Fine motor activities including grasping, gripping and typing would be unrestricted. No working at elevated heights or ladder climbing. These restrictions and limitations would be applicable for the next year to allow the claimant to undergo interventional pain management injections as well as physical therapy to help reduce pain and

improve functionality. The medical file can be reevaluated in one year for functionality and medical necessity for continued restrictions and limitations. . .

(LL000092). Dr. Chemaly concluded that with the above restrictions and limitations, Plaintiff could work an 8-hour day. *Id*.

On January 21, 2015, Dr. Chemaly spoke to Dr. Stambough regarding Plaintiff's condition. (LL000097-99). On January 28, 2015, Dr. Chemaly sent Dr. Stambough a letter summarizing their conversation. The letter stated that Dr. Stambough "is not comfortable providing any restrictions or limitations regarding Mr. Demeritt's functionality and recommended a functional capacity evaluation." (LL000098). He requested that Dr. Stambough review the letter, make any comments or corrections, sign the letter and return it. *Id*. Dr. Stambough signed the letter, agreeing that it was an accurate representation of their conversation and his assessment of Plaintiff. (LL000085).

Bernadette Cook, a vocational consultant with Liberty Life also reviewed the claim file, including Dr. Chemaly's report, as well as the initial vocational analysis report conducted by Patricia Thal. (LL000071-73). She agreed with Ms. Thal's report, and added two additional occupations—Personal Scheduler and Personal Recruiter—that Plaintiff was capable of performing in a sedentary capacity. *Id.*

On February 3, 2015, Liberty Life sent Plaintiff a letter denying his appeal. (LL000075-82). Plaintiff filed this action on March 2, 2015, seeking judicial review of Liberty Life's decision. Plaintiff asks the Court to restore his LTD benefits under the Policy.

## II. ANALYSIS

### A. Standard of Review

The Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to

construe the terms of the plan." *University Hosps. v. Emerson Elec. Co.,* 202 F.3d 839, 845 (6th Cir. 2000). If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989); *University Hosps.,* 202 F.3d at 845 (6th Cir. 2000).

In this case, the Policy states:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(LL000042). Because the policy expressly grants Liberty Life discretionary authority to determine eligibility, it is undisputed that the arbitrary and capricious standard of review applies in this case.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)). Under this standard of review, this Court must determine "whether, in light of the plan's provisions, the plan administrator's decision was rational." *Id*. "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id*. In sum, the decision of the administrator is upheld if it is the result of a deliberate principled reasoning process, if it is supported by substantial evidence and if it is based upon a reasonable interpretation of the plan. *Glenn v. MetLife, et al.*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

On the other hand, indications of arbitrary and capricious decisions include a lack of substantial evidence, a mistake of law, bad faith, and a conflict of interest by the decision-maker.

*Caldwell v. Life Insurance Co. of North America*, 287 F.3d 1276, 1282 (10th Cir.2002). Also, a decision based upon a selective review of the record or an incomplete record is arbitrary and capricious. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir.2005).

The Sixth Circuit has directed that an appeal with respect to the denial of ERISA benefits is to be resolved using motions for judgment on the administrative record. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). Upon review, the District Court is confined to the Administrative Record that was relied on when making a benefits determination. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 612 (6th Cir. 1998). In this case, the Administrative Record includes the Policy and the claim file.

### B. Analysis

Liberty Life argues that its decision is the result of a deliberate principled reasoning process, and is supported by substantial evidence. Plaintiff argues that the termination of LTD benefits was arbitrary and capricious.

#### 1. Medical Records

First, Plaintiff argues that Liberty Life did not attempt to obtain medical records from Dr. Chandoke – records which, according to Plaintiff, conclusively demonstrate the worsening of Plaintiff's condition. (Doc. 16, PageID 490). Plaintiff's argument misinterprets Liberty Life's responsibility under the terms of the Policy. Pursuant to the Policy, proof of a Disability "must be given upon Liberty's request and at the Covered Person's expense." (LL000026). Liberty Life requested records on numerous occasions from physicians Plaintiff listed on his claimant information form (*See* LL000355; LL000279; LL000207; LL000190-191; LL000194; LL000413; LL000374; LL000337; LL000307-308; LL000302-304; LL000298; LL000292-293). Dr. Chandoke was not listed as a treating physician. (LL000355). Further, letters from Liberty

Life to Plaintiff dated December 12, 2013 and May 2, 2014 requested that Plaintiff have any other physicians or specialists forward to Liberty Life all of Plaintiff's medical records pertinent to "supporting a determination of [Plaintiff's] continuing disability." (LL000334, LL000201). Plaintiff did not provide any other medical providers or ask Dr. Chandoke to forward Plaintiff's medical records. In fact, Dr. Chandoke's name appears nowhere in the record until Attachment #6 of Plaintiff's appeal. (LL000123-125). Nevertheless, Plaintiff argues that Liberty Life ignored favorable evidence provided by Dr. Chandoke. However, in rendering his report, Dr. Chemaly specifically noted that he reviewed Dr. Chandoke's December 5, 2014 note. (LL000087-88).

Plaintiff further argues that Liberty Life failed to obtain updated medical records from Dr. Stambough. (Doc. 16, PageID 490). Plaintiff submitted two additional office notes from October 2014 and November 2014 as part of his appeal. Plaintiff stresses that particular timeframe is significant, as an MRI and EMG were performed in October 2014. However, Dr. Chemaly, in issuing his report, not only reviewed the MRI and EMG results, but also corresponded directly with Dr. Stambough. (LL000092). Moreover, the letter sent to Plaintiff informing him that his appeal was denied clearly indicated that Liberty Life reviewed and considered all of updated medical documentation provided by Plaintiff, including the October 2014 MRI and EMG results. (LL000079).

The remainder of Plaintiff's arguments with respect to medical records does not rely on objective medical evidence, nor are they relevant to a disability determination under the Policy. For example, Plaintiff argues that the physical restrictions Dr. Chemaly suggests "are not practical in today's workplace, particularly when you are talking of the realities of a 59 year old man finding such a job in today's job market". (Doc. 16, PageID 493). Whether Plaintiff would

be able to find a job is not the standard; the standard is whether Plaintiff could perform Any Occupation, as defined in the Policy.  In fact, the Policy specifically states that in determining whether someone is Disabled, "Liberty will not consider employment factors, including but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification."  (LL000026).  Accordingly, the Court declines to consider such arguments.

### 2. Treating Physicians

Plaintiff next argues that the Sixth Circuit requires that plan administrators give reasons for adopting an alternative opinion to a treating physician.  Although Plaintiff's assertion is true in the context of Social Security benefits, "under ERISA, plan administrators are not required to accord special deference to the opinions of treating physicians. Moreover, ERISA does not impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. Reliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions."  *Balmert v. Reliance Standard Life Ins. Co.,* 601 F.3d 497, 504 (6th Cir. 2010) (following *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)).  Further, "[g]enerally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald* 347 F.3d at 169.

In this case, Dr. Avioli and Dr. Chemaly not only considered the opinions of Plaintiff's treating physicians, but also corresponded with them.  Of significance, Plaintiff's treating

physicians and Liberty Life's consulting physicians do not generally disagree with the diagnosis of Plaintiff's condition[2].

Moreover, it is questionable whether the physicians actually disagree about Plaintiff's functional capacity. For example, the most recent Restrictions Form provided by Dr. Shockley listed Plaintiff's functional capacity as Sedentary[3]. (LL000326). Similarly, Dr. Chemaly opined that reasonable restrictions for Plaintiff would be "[a]llowance for symptom relieving position break every hour from a seated, standing or walking position for 5-10 minutes. Sitting would be up to 6 hours a day; standing and walking would be up to 2 hours in an 8/hour day, but not consecutive, with allowance for symptom relieving position break every half hour for 5-10 minutes. Occasionally squatting, bending and stooping and reaching below waist and above shoulder and unrestricted between waist and shoulder. Lifting and carrying would be limited to 20 pounds occasionally and 10 pounds frequently[4]." (LL000092). Furthermore, Dr. Avioli opined that Plaintiff could work "with reasonable restrictions and limitations including occasional to frequent sit/stand/walk, occasional stoop/twist/bend/kneel/squat/climb, and no push/pull/lift greater than 15 pounds but otherwise unrestricted use of the arms and hands." (LL000145-146, LL000274-275). Dr. Stambough declined to comment on Plaintiff's functionality, including restrictions or limitations. (LL000091).

Accordingly, a careful review of the three opinions demonstrates that their opinions regarding Plaintiff's functional capacity are similar. Thus, at the very least, Liberty Life did not totally ignore the available opinions of Plaintiff's treating physicians.

---

[2] For example, Dr. Avioli agrees that the medical record supports the conclusion that Plaintiff's "impairing orthopedic diagnosis is intermittent low back pain do to lumbar strain." (LL000147).

[3] As noted above, sedentary is defined on the Restrictions Form as "[l]ifting/carrying up to 10 pounds occasionally, sitting 50% of the time and standing/walking occasionally."

[4] Suggested restrictions further included that "pushing and pulling would be limited to 30 pounds occasionally and 10 pounds frequently. Fine motor activities including grasping, gripping and typing would be unrestricted. No working at elevated heights or ladder climbing."

15

### 3. Physical Examination

Plaintiff takes issue with Liberty Life's failure to conduct a physical examination. The "decision to conduct a file review rather than a physical exam [is] just one more factor to consider in our overall assessment of whether [an administrator] acted in an arbitrary and capricious fashion." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). There is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert*, 409 F.3d at 296.

In this case, as discussed above, the reviewing physicians' reports were thorough and provided well-reasoned explanations. Dr. Avioli conducted three separate file reviews, taking into account updated medical record documentation each time. (LL000315-319; LL000274-277; LL000145-150). In addition, Plaintiff's treating physician, Dr. Stambough, acknowledged that Dr. Chemaly's summary of Plaintiff's condition was accurate. (LL000085). This summary, in part, assisted Dr. Chemaly in concluding that Plaintiff could work with restrictions and limitations. (LL000087-93). Therefore, the Court finds that a file review was sufficient in this case.

### 4. Conflict of Interest

Plaintiff seems to suggest that a conflict of interest exists in this case. (Doc. 16, PageID 495). When a plan administrator has a dual role, determining whether an employee is eligible for benefits and paying benefits out of its own pocket, a conflict of interest exists. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2344-45 (2008). The answer to the conflict question is less clear when the plan administrator is a professional insurance company—such as Liberty Life in this case—rather than the employer itself. *Id*. at 2349. The significance of the conflict varies from case to case. *Id*. at 2346.

In this case, the Policy is administered by Liberty Life, but sponsored by Wal-Mart. Accordingly, any conflict of interest has little significance in this case. Plaintiff's cursory argument that a conflict of interest exists does not explain how such a conflict led Liberty Life to make an unreasoned decision. Likewise, Plaintiff's allegation is only conclusory; there is no evidence that any conflict motivated the denial of benefits in this case. *See O'Bryan v. Consol Energy, Inc.*, 477 Fed.Appx. 306, 308 (6th Cir. 2005).

### 5. Social Security Administration's Disability Determination

Next, Plaintiff argues that Liberty Life's decision was arbitrary because "a court should give significant weight way [sic] to the decision of the Social Security Administration." (Doc. 16, PageID 495). A plan administrator's failure to consider an award of benefits by the Social Security Administration is a consideration for the Court's review. *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006). One reason for differing decisions results from different requirements under the Social Security Act and ERISA. Unlike the Social Security Act, ERISA does not require plan administrators to follow a "treating physician rule," obligating plan administrators to delineate specific reasons for straying from a treating physician's opinion, based on substantial evidence in the record. *Black & Decker Disability Plan*, 538 U.S. at 822-23. Thus, while the Social Security Administration is required to give deference to the opinions of a claimant's treating physician, plan administrators under ERISA are not. *See Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 529-533 (6th Cir. 2003); *See* also *Whitakerv. Hartford Life & Acc. Ins. Co.*, 404 F.3d 947 (6th Cir. 2005).

Here, in denying Plaintiff's LTD benefits under the Any Occupation standard, Liberty Life explained:

> Liberty Life acknowledges that the Social Security Administration found you disabled and awarded you Social Security Disability benefits. However, since that decision was made, Liberty Life requested updated medical records,

17

consulted with your physicians, and conducted vocational assessments on your claim. Therefore, based on these additional reviews conducted we determined that you were no longer disabled from any occupation per the terms and provisions of the Wal-Mart Group Disability Policy. Benefits will be paid through August 3, 2014, and closed effective August 4, 2014.

The record further shows that Dr. Chemaly reviewed the Social Security Administration's documents in issuing his report. (LL000087-88). The Court notes, however, that although the Social Security Administration's decision is part of the record, the medical documentation relied on by the Social Security Administration is not. Liberty Life again argues, however, that providing documentation of the Social Security Administration's decision-making is an obligation of the claimant under the Policy. (Doc. 13, PageID 471). Nevertheless, the Court is skeptical of the somewhat general reasoning provided by Liberty Life to explain the contradiction between the two decisions. However, the Social Security Administration's disability determination "does not, standing alone, require the conclusion that [a plan administrator's] denial of benefits was arbitrary and capricious." *Calvert*, 409 F.3d at 295 (6th Cir. 2005). It is one factor, when reviewing the record as a whole, in determining whether a decision was arbitrary and capricious. *Id*. And as Liberty Life correctly points out, the Policy governs its determination of whether Plaintiff is Disabled. Accordingly, the Court cannot conclude that Liberty Life's explanation of its contrary opinion to that of the Social Security Administration is sufficient to overcome the substantial evidence supporting Liberty Life's decision.

### III. <u>CONCLUSION</u>

Upon careful review of the administrative record, the Court finds that Liberty Life's decision to deny Plaintiff LTD benefits was not arbitrary and capricious. "[T]he ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and

capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.,* 313 F.3d 356, 362 (6th Cir.2002). In this case, Liberty Life had a rational basis for concluding that Plaintiff was not Disabled under the Policy's Any Occupation standard. There is no countervailing medical evidence that Plaintiff cannot perform any occupation, particularly in a sedentary capacity with appropriate restrictions and limitations.

Consistent with the foregoing, Plaintiff Kevin Demeritt's Motion for Judgment (Doc. 16) is **DENIED** and Defendant Liberty Life's Motion for Judgment (Doc. 13) is **GRANTED**. This matter shall be **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                                     s/*Michael R. Barrett*
Michael R. Barrett. Judge
United States District Court